This case is 21-1107 Montoya v. City and County of Denver and arguing first for the appellant is Mr. Goldfarb. You may proceed. Thank you, Your Honors, and may it please the Court. My name is D.J. Goldfarb and I am up here today to address a particular legal question raised in the briefing concerning the Any Crime Doctrine. My colleague, Mr. Doherty, will address the remaining issues raised by the defendants in the briefing. But the question that I want to address this morning is whether or not the Fourth Amendment jurisprudence had developed by January 2000 when Detective Schneider authored the arrest affidavit of Mr. Montoya. Counsel, can we start at the beginning? Sure. How is this argument preserved? This argument is preserved by not only the fact that we raised it in the underlying briefing on the motion to dismiss, both on the merits as it relates to whether or not there was a constitutional violation, as well as under the clearly established law prong of qualified immunity. Beyond that, in the order on the motion to dismiss, the District Court addressed the matter and rejected application of the Any Crime Doctrine such that the District Court passed on the issue. Did you articulate the legal basis for your argument about the Any Crime Rule? Yes, Your Honor, we did. In the motion to dismiss? In the motion to dismiss briefing, yes. Can you point me to where that was? Yes, it's at Appellate Appendix pages 1218-19, 1223-24, 1283-85, and the latter citation is in the reply briefing. Thank you. Not only that, but the District Court reviewed the issue and rejected application of the under the VDAR Colorado Springs case to have preserved the matter for review. Is there any case that has ever held the Any Crimes Doctrine to apply to a warrant-based arrest? As of January 2000, when the warrant was authored, no. And since then? Since then, the 11th Circuit in the Williams case has addressed the matter. Likewise, the 5th Circuit... Didn't those cases involve facts where the probable cause for the other crime were contained within the arrest warrant or the arrest affidavit? In the Williams case, it was determined that there were no facts outside of the arrest warrant which would have supported probable cause. In the Arizmendi case, yes, there were facts within the affidavit itself that supported a finding of probable cause, which is no different than this case. And that is in part one of the District Court's errors below, which is in the arrest affidavit, Detective Schneider set forth that several Hispanic males were seen fleeing a damaged Lexus SUV that had been dumped elsewhere in Metro Denver and that the Lexus itself contained blood evidence. So counsel, your argument depends on the affidavit in this case establishing probable cause for accessory liability, right? Correct. Not only the affidavit, but also the information obtained from Mr. Montoya's interview that is not alleged to have been coerced or tainted in any way. So removing the falsities, your contention is that there is information in the affidavit itself that supports probable cause? Correct, yes. Okay, but the District Court found otherwise? Yes. And you did not challenge that? The District Court found otherwise. The issue with the District Court's finding, though, was a mischaracterization of the allegations in the Second Amendment complaint. Well, that may be true, assuming, but where did you make that challenge to the District Court's factual finding that the affidavit removed of falsities contained allegations that would support probable cause for accessory liability? The treatment of that issue appears within our clearly established law analysis. So it's not separately articulated? No. It assumes it? Yes, correct. And the mischaracterization that occurred at the District Court level was the assumption that no witness placed Mr. Montoya fleeing from that Lexus SUV. The problem with that finding was that the District Court lumped in all of the witness statements into one allegation, which is set forth at paragraph 94 of the Second Amendment complaint, which only states that the suspects did not place Mr. Montoya at the scene of the murder or having been involved in the burglary. I guess I'm just having trouble understanding how even assuming the any crime rule is in play here, as you contend, it would have an impact on the constitutional analysis if you didn't challenge the District Court's factual finding. Because regardless of the constitutional analysis and the clearly established law analysis, there is no case that existed as of the crafting of this arrest affidavit that would have informed my client that there could be no valid arrest based upon the any crime doctrine. In fact, the history of application... I'm sorry, you're not answering my question. My question is really just about the District Court's factual finding that the affidavit stripped of falsities, the allegations in that affidavit... I'm sorry, in the warrant affidavit do not contain any allegations that would support probable cause for accessory liability. And so unless that is challenged, I don't see how we even grapple with your any crime rule argument. Well, again, the findings itself are addressed within the secondary evaluation of the clearly established law doctrine. And to kind of mesh the two together or to look at the constitutional violation prong and then turn that into somehow overturning the obligation to show that Detective Schneider was on notice that the any crime doctrine wasn't applicable to a warrant-based arrest back in 2000 is, I believe, to be an improper analysis under the qualified immunity doctrine. Okay. So let me see if I'm following you. So for purposes of your argument here today, you're not contesting the fact that there was a constitutional violation? No. No. Okay. And so that gets us over to clearly established. And the argument is that your client wasn't on notice in 2000 when no court had held that the any crimes doctrine could apply in this situation. They weren't on notice that later no court would hold or that later a court would hold that it did not apply. Well, I mean, because it's not like there was a rule back then that applied specifically to this situation. And now we're jerking the rug out from under you. It's a situation where there was no rule. And your position is, well, my client couldn't have known that there wouldn't be a rule in the future. Correct. Well, and that is the very purpose of the clearly established law prong is that my client had no notice that there could be a Fourth Amendment violation under the circumstances. How is the constitutional violation just not clearly established by Franks? Because the question, Franks is a procedural matter. It is removing the tainted information from the affidavit or adding in omitted information. The question then becomes whether or not a Fourth Amendment violation exists once that information is either included or excluded. And that is where the any crime doctrine would come into play. Well, I mean, after Franks, I mean, at least as a baseline matter, it was clear that, you know, including false information that had to be excised would be a constitutional violation. Correct. But that gets you to the Fourth Amendment question of whether or not probable cause exists to affect the arrest, which is where the any crime doctrine comes into play in this case and whether or not Detective Schneider had facts at his disposal that would have supported an arrest of Mr. Montoya for accessory liability. When you say facts at his disposal, do you really mean allegations in the affidavit? I mean both facts at his disposal and inferences from portions of Mr. Montoya's interview that have not alleged to have been tainted or coerced in any way, shape, or form. So you're relying on information outside the affidavit? Inferences from within the affidavit, yes. Okay, so we're back inside the affidavit. Yeah, I want to be clear on that. If the paragraph about the young Hispanic males running from the scene of the vehicle, if that paragraph were not in the affidavit, would you concede that your argument would fail? Yes. Okay. And with that, I'll turn it over to Mr. Cordy. Thank you, Your Honors. Peter Daugherty here on behalf of Jonathan Priest. And by agreement, I'm covering some of the other aspects of the case. Just very briefly, procedurally, the way we get here is that we were here in 2018 with the First Amendment complaint. We had an issue, a court-ordered opinion. After that, we had a Second Amendment complaint. As part of that, there were eight claims that were alleged at the district court level. Judge Koehn eliminated five of those. And so we're really here for just two as it relates to the individuals. And that being the Franks claim and the conspiracy claim that's in conjunction with it. My client, Jonathan Priest, and the two other defendants, Vigel and Martin, are in a slightly different situation than Mr. Schneider. We agree with his analysis, but with respect to our clients, they were not involved in the actual drafting of the warrant. And so they didn't have the personal participation. Is that all it takes to satisfy personal participation? Or not all, but you contend they have to be involved. That's how you satisfy it? Yes, yes. And what's your support for that? There is a number of cases, which we cited in our briefing, which talks about the need for any specific constitutional claim, there needs to be that particularized specific personal participation. So eliciting a false confession is not enough personal participation? Not in this case, no, Your Honor. But it could be. So you're not saying they have to physically write the affidavit? In this case, that is insufficient given the decision in 2018. The reason being is that the coercion of the self-incriminating statements was disposed of both in the 2018 decision as well as in the district court action here, largely based upon the decision of vote, which said that use of those incriminatory statements anywhere during the criminal proceedings, first you have absolute immunity if that's addressed in the context of a trial. But if it's used at some other time during the criminal proceedings, that's what footnote 14 of the first Montoya case addresses, there's qualifying immunity because we do not have clearly established law, which would say that that was in any way part of what an officer would understand to be the law, which is what the clearly established prong of qualified immunity is. And in this particular case, what vote talks about, which was a 2016 decision dealing with 2013 facts, is that when you have use of coerced statements in a probable cause hearing, that was not clearly established. In this case, the argument is use of those statements as part of a warrant is also not clearly established. So from our perspective, no. Given the decisions that have been made, this claim regarding a Franks decision is at odds with both the decision as to the Fifth Amendment self-incrimination as well as the malicious prosecution. Malicious prosecution, we go back to some of the decisions that describe what that is, it's the introduction of criminal process. In both Wilkins and Magmire, both of them say use of, I see my time is up if I may briefly. Go ahead and wrap up, yeah. Thank you. What I was going to say is that what was decided in those cases is the introduction of the warrant is the institution of that malicious prosecution process. So standing alone, we have a case in 2018 which has two decisions in which this particular claim cannot exist. Thank you. Thank you, counsel. Your permission, Mr. Fisher. Good morning, Your Honors. David Fisher on behalf of Lorenzo Montoya. We're here on a Franks claim violation. This has been the law of the land for more than half a century at this point. In its well-reasoned and thorough order, the district court correctly held that the well-pleaded allegations in this complaint established that the defendants worked together in tandem to produce and include materially false misleading information into an affidavit, which was then used to obtain an arrest warrant for Lorenzo Montoya. I first want to touch on the defendant's argument from defendants Vigil, Martinez, and Priest that they did not personally participate in procuring this warrant. To really understand their level of personal participation, if Your Honors have not watched it yet, I would respectfully urge that you watch the videotape of the interrogation to understand the level of personal participation of those three defendants, because the citations in the cold complaint don't really do that video justice. You have to watch that video to see the size disparity between the 14-year-old boy, Lorenzo Montoya, who is 5'3 and 110 pounds, and the three grown adults who are crowding in around him in a locked room for 2 1⁄2 hours. You have to watch that video to see the despair and the distraught in Mr. Montoya's face as these detectives over and over again refuse to take his denial 65 times. The legal question here, after this arrest, the Supreme Court held in Devin Peck that in a warrantless scenario, the officers get the benefit of the doubt if there are other chargeable crimes alongside the unconstitutional charged crimes. And there are some cases that the officers point to from other circuits, Errors in Motto, Vance, Williams in the 11th Circuit, and we have Bickford here in the 10th Circuit that was unpublished, that suggests that any crimes doctrine has some force, certainly on the warrantless side, but it's unclear on the warrant-based side. Why doesn't that create enough doubt where a reasonable officer under the clearly established prong would not be on fair notice that he might get the benefit of another potential felony that you can tease out of the arrest warrant? Because it's got to be based on then existing clearly established law. And as Your Honor has all pointed out,  there wasn't a case that carved it out in the warrantless context. Exactly. And so before Devin Peck. And Devin Peck gave him an opportunity to establish. Devin Peck said it was not clearly established. Well, I mean, probably the most important case on point on this very issue is Your Honor's decision in Wilkins v. Dureas. That was a case involving 1996 conduct, decided in 2008 after Devin Peck, by Your Honor. Those defendants in that case argued like these defendants in this case. There was probable cause outside of the PC affidavit that they didn't put in there. The argument here is that the facts are within the PC affidavit. Yeah, the argument seems to be both. At the district court they argued that it was in the PC affidavit. Opposing counsel just conceded that their argument was based on the paragraph within the affidavit. I can address that assertion if you'd like. Yeah, I mean, I think they've narrowed, to me, they've narrowed the scope of their claim to what's in the affidavit. Well, I mean, first of all, I think the district court thoroughly eviscerated that claim on pages, I think it was 35 and 36 of his order, as he went through step by step in the affidavit, took out all the false and misleading information and said, there is no constitutional violation here without, I'm sorry, there is no crime here or probable cause for a crime without those things. And do you agree that your adversary hasn't challenged that factual finding? Correct. They have not challenged that on appeal. They challenged it at the district court, lost, and have not challenged it on appeal. And that's why we argue it's not right for your honors to consider that at this point. And if we agree with that argument, do we need to reach the merits of any crime rule contentions on appeal? Not necessarily. Just to briefly finish up my argument on the personal participation, I was just talking kind of about the facts of what make that personal participation. But clearly under this, this court's decision in the United States versus Kennedy and under the ninth circuit decision in the United States versus Leon and under the holding in Franks itself, all those cases, which were clearly established before the conduct in this case, stand for the proposition that defendants who coerce this confession, which was used to create the false or misleading information in the affidavit, cannot quote, insulate themselves from liability just because they didn't author or draft the complaint or the arrest affidavit, I should say. I would just point out in regards to your honor, Timkovich's question earlier, ours, Mendy is distinguishable. I think you might've pointed this out because in that case, there actually was a probable cause in the affidavit. In this case, there was not. Vance versus nunnery, actually, which was the law of the land in the fifth circuit in 1998. Can you kind of just restate for me why the affidavit does not establish probable cause for accessory? Sure. There are Mr. Montoya's statements in there, which do not establish probable cause for accessory. If true, they would establish probable cause for murder, burglary, et cetera, the crimes he was convicted of. In our well-pleaded allegations in the complaint, we made out how none of those admissions were correct and how they should all be excised from the complaint. Then we also said in the complaint that no other witness statements placed Montoya at being at the crime at all. In fact, there were no other witness statements that made him an accessory either. What about the statement that he might've been one of the individuals fleeing the stolen Lexus at the end of the evening? If all that's left in the affidavit is three Hispanic males fled the scene, how does that mean that Mr. Montoya, there's a substantial probability that Mr. Montoya committed a crime? Well, he admitted in the interview that he'd gone on a joyride. Yes. He admitted in the interview that he'd gone on a joyride with these two other individuals. He didn't admit in the interview that he was with them at any time sometime later when they abandoned the car, left the car, or anything like that. There's a big leap in inference there that he would've been with them when they abandoned the car, let alone whether or not that would be a crime under accessory, which is also a different situation. I just also want to briefly address their argument that unless the court thinks it's unnecessary, because they seem to be abandoning the argument that there's information outside the affidavit that he was guilty of accessory. I'll just touch on it briefly. They claim in the non-suppressed portion of the interrogation he admits to be an accessory. That's not true. He only admits to being in a car, learning that others had committed a crime. That's not enough under Colorado law to be an accessory. To be an accessory under Colorado law, you have to actually, with intent to hinder, delay, prevent the discovery, detection, or apprehension, or prosecution, you have to render assistance to such a person. And mere failure to inform public authorities of one's knowledge of a felony is not sufficient. And that's People v. Sandoval. It was the law of the land in 1990 in the Court of Appeals of Colorado. I also want to just address the defendant's argument that Mr. Montoya's 14-year later plea agreement is somehow relevant to the PC inquiry in the year 2000, and that's just not so. Right? I mean, that information was not contained in the warrant affidavit, obviously. It happened 14 years later. It's irrelevant. And even if you take the defendant's argument to the extreme, it could be something Schneider knew somewhere else. He didn't know, obviously, Montoya would plead 14 years later to accessory after the fact. What's your response to the Heck argument? I think my number one response to the Heck argument is your Honor's quote in page 19. I'm sorry, I think it's, yeah, page 19, footnote 7 of your prior ruling in this case, where you say that Montoya meets the Heck argument in this case because he is not challenging the conviction for accessory. Right? And so if we meet the Heck requirement in that prior complaint, which was up on malicious prosecution, which has a favorable termination requirement, then we certainly meet the Heck requirement in this claim, where we're only challenging the validity of the warrant or the institution of legal process. And that constitutional violation is complete as soon as that false and misleading information is tendered to the magistrate who then institutes the legal process. It doesn't matter what happens later in the case. So if we met the Heck requirement in regards to a malicious prosecution claim, which is already the law of this court in this case, then we certainly meet it for a Frank's claim. I think the court in Heck gave an apt warning when it issued its decision when it gave the analogous situation of a search warrant violation being complete at the time the search warrant violation happens, and therefore that plaintiff is damaged. He has a claim no matter what happens with the rest of the claim at that point. I think that is all my, well, I would just, lastly, I think that the question back to the clearly established law prong on the only last thing I'll say is back to the clearly established law prong on what the defendants did in this case. There is no doubt under the jurisprudence in this circuit and in the United States Supreme Court at the time of the conduct in this case that it was clearly established that the defendants couldn't do what they did in this case because of Frank's, because of Stewart v. Donges, Pierce v. Gilchrist, Wolford v. Lassiter, United States v. Leon, Malley v. Briggs. All of those cases place the issue beyond debate at the time the arrest warrant was created in the year 2000. And with that, unless the panel has further questions for me. Thank you, counsel. I think we understand your arguments.